# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EUGENE GOLSTON,<br><br>Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 18-cv-02844<br><br>Judge Martha M. Pacold |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eugene Golston filed a complaint against his former employer, Ford Motor Company, alleging race, sex, and age discrimination. [1]. Ford moves for summary judgment on all claims. [38]. For the following reasons, Ford's motion is granted.

## Background

In deciding Ford's motion for summary judgment, the court views the evidence in the light most favorable to Golston, the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff Eugene Golston, an African American male born in 1969, worked as an hourly electrician at the Chicago Assembly Plant of Ford Motor Company from May 5, 1995 until January 17, 2018. [39], DSOF ¶¶ 1–2.[1]

Golston completed anti-harassment training in 2012 and 2015 at Ford. [39], DSOF at 2-3 ¶¶ 5, 10. Golston received a copy of and understood Ford's anti-harassment policy. [39], DSOF at 2 ¶ 5. Ford's anti-harassment policy set forth examples of sexual harassment including, among other things: "[a]busive, offensive, or unwelcome sexual conversation, innuendo, jokes or teasing," "[u]nwelcome sexual flirtation, advances, or propositions," and "[u]nwanted physical contact, including

---

[1] Bracketed numbers refer to docket entries and are followed by page or paragraph numbers, as appropriate. Page number citations refer to the CM/ECF page number. Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "DSOF" for Ford's Statement of Facts [39], "PSOF" for Golston's Response to Ford's Statement of Facts and Additional Facts [49], and "Def.'s Reply PSOF" for Ford's Reply to Golston's Statement of Additional Facts [55].

touching, petting, kissing, hugging, pinching, or brushing against another person." [42-1] at 3 (sealed).[2] Golston understood that Ford had a zero tolerance anti-harassment policy, meaning a violation would result in discipline up to and including discharge. [39], DSOF at 2 ¶¶ 6–7.

On December 1, 2017, Ford's Labor Relations Department received a handwritten complaint about Golston from a female employee, DW.[3] [39] ¶ 17. DW's complaint reported two incidents of inappropriate conduct. First, DW described an encounter in which Golston "grabbed my hand and was asking what color nail polish [I] had on. I slammed my hand down and told him don't touch my hand." [39], DSOF at 5 ¶ 30. DW identified QY, a male coworker of DW, as a witness to this incident. [39], DSOF at 6 ¶ 32.

Second, DW described an encounter with Golston in which she was fixing the ceiling of a Ford car, and Golston walked up from behind and gave her a massage. [39], DSOF at 5 ¶ 31. DW reported that she was "distressed" when she saw who it was and "gave [Golston] an evil look to get him to back away." [39], DSOF at 5 ¶ 31. DW also reported that Golston noticed she was sick and told her, "I know what you [sic] could make you feel better if you rubbed Vicks all over your body." [39], DSOF at 5 ¶ 31.

Ford assigned the investigation of DW's complaint to Heather Lange, a labor representative at Ford. [39], DSOF at 4 ¶ 19. Lange interviewed QY, the witness to the first incident. [39], DSOF at 6 ¶ 32. QY corroborated DW's account that Golston grabbed her hand. [39], DSOF at 6 ¶ 33. QY also reported that he saw Golston leaning over another female employee, TE, and that Golston didn't "really talk to guys" but "talk[ed] to all women. He rubs their backs, talks to them, massage[s] their shoulders." [39], DSOF at 6 ¶ 33.

After interviewing QY, Lange interviewed TE. [39], DSOF at 6 ¶ 34. TE reported that Golston "does make a lot of sexual comments." [39], DSOF at 6 ¶ 35. TE also said that Golston had touched her in the past, explaining that "he always has to touch my shoulders or massage them or touch too close to my waist, right above my waist." [39], DSOF at 6 ¶ 35. TE identified LB, a male coworker, as a possible witness to Golston's behavior. [39], DSOF at 6 ¶ 35. In an interview with Lange, LB reported that he saw Golston touch TE above the waist. [39], DSOF at 6-7 ¶ 37. LB also reported that Golston was "forcing himself" on TE and that Golston

---

[2] When the court refers to a sealed document, it attempts to do so without revealing any information that could reasonably be deemed confidential. The court discusses information from these documents only to the extent necessary to explain the path of the court's reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

[3] Like the parties, the court refers to the non-party employees by their initials.

2

"will rub himself on her [TE] a bit or grab her by the waist or hand. Honestly he does that to numerous females." [39], DSOF at 6-7 ¶ 37.

Lange subsequently asked Golston whether he had ever rubbed or massaged a co-worker's shoulders on Ford's property or touched a female's hands. [39], DSOF at ¶ 38. Golston denied this conduct in a sworn statement. [39], DSOF at ¶ 39.

Lange met with Anita O'Connor, a human resource supervisor at Ford with oversight over complaints of sexual harassment under the anti-harassment policy, to discuss potential disciplinary action. [39], DSOF at 4 ¶ 24–26. O'Connor ran a "comparable search" on Golston, which allowed her to sort employees by type of infraction and discipline. [49], PSOF at 16–17 ¶¶ 26–30. O'Connor set the infraction perimeters to "improper conduct" and "other," generating a list of infractions, which she then narrowed by the terms "anti-harassment," "misconduct," "zero tolerance," or "touching" (the employee discipline comments added by Ford's labor representative), [49], PSOF at 17 ¶ 30, to sort by what "might fit" as a similar investigation, [55], Def.'s Reply PSOF at 11 ¶ 30. The goal of a "comparable search" is to ensure discipline is fair and consistent. [49], PSOF at 16 ¶ 26.

Lange prepared a summary of the investigation, which reflected that (1) QY confirmed that Golston grabbed DW's hand; (2) QY confirmed that Golston massaged females' shoulders; and (3) LB confirmed that Golston touched TE above the waist. [39], DSOF at 7 ¶ 40. Lange's summary of the investigation also included the results of O'Connor's comparable search. [49], PSOF at 17 ¶ 31. At the conclusion of the investigation, Lange recommended discharge. [39], DSOF at 7 ¶ 42. O'Connor and Theo Chell, a senior labor relations representative at Ford, both agreed with Lange's recommendation. [39], DSOF at 7 ¶ 43.

On January 17, 2018, Ford notified Golston he was being terminated for violating Ford's anti-harassment policy. [39], DSOF at 8 ¶ 46. O'Connor explained that under Ford's policy, "[u]nwelcome inappropriate touch of a sexual nature results in termination." [39], DSOF at 8 ¶ 45.

On April 4, 2018, Golston filed a Charge of Discrimination with the Equal Employment Opportunity Commission, alleging race, sex, and age discrimination. [39], DSOF at 9 ¶ 52. Golston then filed a complaint in this court that similarly alleges race, sex, and age discrimination. [1]. Ford now moves for summary judgment. [38].

## Legal Standards

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

3

322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). Construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

Golston alleges (1) race discrimination under § 1981, [1] at 5–7, (2) sex discrimination under Title VII, [1] at 7–8, and (3) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, [1] at 8–10. Golston's claims are based solely on his termination; he did not experience any other alleged discrimination at Ford. [39], DSOF at 8-9 ¶¶ 49–51.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). At summary judgment, the question is "whether the evidence would permit a reasonable fact-finder to conclude that [the plaintiff] was subjected to an adverse employment action based on a statutorily prohibited factor." *McCurry v. Kenco Logistics Serv., LLC*, 942 F.3d 783, 788 (7th Cir. 2019).

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). "To prevail, a plaintiff must initially plead and ultimately prove that, but for race, [the plaintiff] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

4

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1). "To prevail on an age-discrimination claim, the plaintiff must prove that his age was the but-for cause of the challenged job action. . . . In other words, under the ADEA it's not enough to show that age was *a* motivating factor. The plaintiff must prove that, but for his age, the adverse action would not have occurred. . . . In this respect, the ADEA is narrower than Title VII because Title VII protects against mixed-motive discrimination." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018) (emphasis in original) (citations, internal quotation marks, and alterations omitted). At summary judgment, the question is "whether the evidence as a whole would allow a reasonable jury to find that the plaintiff suffered an adverse job action because of his age." *Wrolstad v. Cuna Mutual Ins. Soc.*, 911 F.3d 450, 454 (7th Cir. 2018).

Section 1981 and ADEA claims differ from Title VII claims since Section 1981 and the ADEA require but-for causation, while Title VII's causation requirement is the "motivating factor" standard described above. *See Comcast*, 140 S. Ct. 1009, 1019 (2020) (Section 1981); *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 176 (2009) (ADEA); *Kilgore v. FedEx Freight*, 458 F. Supp. 3d 973, 978 (N.D. Ill. 2020).

The parties analyze all three of Golston's claims together through two distinct frameworks. The first is the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which is "a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (quoting *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017)). The second, articulated in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), is an analysis of whether the evidence "as a whole" supports discrimination. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). Both frameworks are available for all three of Golston's claims. *See Fields v. Board of Ed. of City of Chi.*, 928 F.3d 622, 625 (7th Cir. 2019) ("We apply the same standard to discrimination claims under § 1981, Title VII and the Age Discrimination in Employment Act."). Accordingly, the court assesses Golston's claims under both frameworks below.

## Analysis

### I. *McDonnell Douglas* Framework

To establish a prima facie case of discrimination under this approach, Golston must show that (1) he is a member of a protected class; (2) his job performance met Ford's legitimate expectations; (3) he suffered an adverse employment action; and (4) Ford treated another similarly situated employee who

5

was not a member of the protected class more favorably. *See LaRiviere v. Board of Trustees of Southern Ill. Univ.*, 926 F.3d 356, 360 (7th Cir. 2019). "Once a prima facie case is established, a presumption of discrimination is triggered. The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for its action. . . . When the employer does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is a pretext, which in turn permits an inference of unlawful discrimination." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (citations and internal quotation marks omitted).

### A. Similarly Situated Employees

The only element of the prima facie case in dispute is element four: whether Ford treated other similarly situated employees from a non-protected class more favorably. "Similarly situated employees must be directly comparable to the plaintiff in all material respects, but they need not be identical in every conceivable way." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quotations omitted). "In the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 847 (quotations omitted).

Golston identifies other employees who engaged in misconduct without termination, making his claim one of "disparate discipline." *Id.* at 850. In such cases, "the similarly-situated inquiry often hinges on whether co-workers engaged in comparable rule or policy violations and received more lenient discipline." *Id.* (quotations omitted). The Seventh Circuit has explained that comparators must have engaged in "similar—not identical—conduct" of "comparable seriousness." *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 689 (7th Cir. 2007) (quotation omitted). Further, "company discipline rules are not conclusive indicators of comparable seriousness," but courts look instead to the "similarity of the underlying conduct in determining whether employees are truly similarly situated." *Brown v. Chicago Transit Auth.*, 234 F.3d 1272 (7th Cir. 2000) (quotation omitted).

Golston argues that Ford treated three female employees, three non-black employees, and one younger employee more favorably than him. [48] at 11–13. According to Golston, three female employees were not terminated despite violations of the anti-harassment policy. The first female employee received a two-week suspension after a complaint reported conduct including "forcibly grabbing another employee's hand resulting in a cut and causing the employee to feel threatened and scared." [49], PSOF at 18 ¶ 34; [55], Def.'s Reply PSOF at 12 ¶ 34. The second female employee received a 30-day suspension after a complaint reported conduct including calling another employee a "stupid b****," threatening to "beat her f****** a**," shoulder-checking her, and pulling her by her apron cord.

6

[49], PSOF at 18 ¶ 35; [55], Def.'s Reply PSOF at 12–13 ¶ 35. The third female employee received a 30-day suspension after a complaint reported that she backed into another worker and forcibly pinned him to a door. [49], PSOF at 19 ¶ 38; [55], Def.'s Reply PSOF at 14 ¶ 38.

Golston also identifies three non-black employees who allegedly received more favorable treatment than he did. Ford imposed a 30-day suspension on a white employee who engaged in a verbal altercation that escalated into physical contact. [49], PSOF at 18 ¶ 37. When two non-black employees engaged in an altercation, resulting in one employee striking another in the arm, Ford reprimanded one employee and gave the other a two-week unpaid leave. [49], PSOF at 19 ¶ 39. Finally, Golston identifies in support of his age discrimination claim a 28-year-old employee who allegedly received more favorable treatment. The employee violated the zero-tolerance policy by using profanity and physically touching another employee; Ford imposed a 30-day suspension on the employee. [49], PSOF at 18 ¶ 36.

As an initial matter, Golston has not shown that any of the proposed comparators were disciplined by the same decisionmaker as he was. *See Ellis v. United Parcel Serv., Inc.*, 523 F.3d 823, 826 (7th Cir. 2008) ("[M]ost of Ellis's purported comparators are not similarly situated to him because they were not subject to the same decisionmaker as Ellis when they purportedly violated the policy. Different decisionmakers may rely on different factors when deciding whether, and how severely, to discipline an employee."). Golston admits that the ultimate decisionmaker responsible for his termination was Lange. [49], PSOF at 6 ¶¶ 27, 28. Yet he has not pointed to any evidence about who decided how to discipline the comparators. [55], Def.'s Reply PSOF at 11–14 ¶¶ 33–36. And Lange testified that they were "not her cases." [52-2] at 27 (sealed).

Moreover, none of these comparators engaged in comparable violations of the anti-harassment policy, since their conduct did not involve sexual harassment or a pattern of touching multiple individuals. *See Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 563 (7th Cir. 1998) (plaintiff terminated for sexual harassment must show that the comparator's behavior "prompted a complaint of sexual harassment to management" for the comparator to be similarly situated); *see also Needham v. BI, Inc.*, No. 00-cv-01550, 2001 WL 558144, at *7 (N.D. Ill. May 21, 2001).

Golston contends that in evaluating whether his proposed comparators were similarly situated, the court should disregard the "unsubstantiated accusation that Golston massaged the shoulders of multiple wom[e]n." [48] at 9. Golston points out that no other employee witnessed Golston massage DW's shoulders, and no one other than QY saw Golston massage TE's shoulders. Golston seeks to downplay the other accusations as well. He concedes that LB witnessed him touch TE "above the waist," but argues no one provided further detail suggesting he touched TE in a

7

"sexual nature." [48] at 10. Finally, he argues that the incident in which he allegedly grabbed DW's hand was also non-sexual and minor, and not itself grounds for termination. *See* [55], Def.'s Reply PSOF at 3 ¶ 7. He argues that disregarding the "unsubstantiated" shoulder massage incidents, only two non-sexual touching incidents are left, and the comparators were disciplined less harshly for worse behavior.

To determine whether Golston's comparators are similarly situated, it is enough to note that all comparators involved a single complainant. In contrast, several different employees complained of Golston's sexual harassment or inappropriate touching. Ford received numerous complaints about Golston's conduct that, at a minimum, alleged harassment with sexual overtones. *See* [39], DSOF at 3-4, 5-7 ¶¶ 17, 18, 31, 34, 35, 37.

Golston argues that "[t]wo unsubstantiated allegations . . . do not make them substantiated." [48] at 10. But Ford was not required to exclude from consideration all complaints that were not independently witnessed by a third party. Complaints collectively amounting to a pattern of behavior can serve as corroboration for each individual account. Lange testified that the complaints against Golston established such a pattern. [39], DSOF at 7 ¶ 41. Regardless of whether each individual complaint was corroborated by a third-party witness, this scenario clearly sets Golston's case apart from those of the employees who were not terminated.

Since Golston has not shown that any other similarly situated employees engaged in comparable rule or policy violations, he cannot establish a prima facie case of discrimination.

B. Pretext

Even if the comparators were similarly situated, Ford has offered a legitimate, nondiscriminatory rationale for terminating Golston—it claims Golston inappropriately touched female employees in violation of the anti-harassment policy. [39], DSOF at 8 ¶¶ 44, 47; [40] at 6. This nondiscriminatory rationale shifts the burden back to Golston to present evidence that the stated reason was pretextual. *Barnes v. Bd. of Trustees of Univ. of Illinois*, 946 F.3d 384, 389 (7th Cir. 2020). To show pretext, Golston "must present evidence suggesting that the employer is dissembling." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). "It is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 601 (7th Cir. 2010) (quoting *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005)).

To show pretext, Golston argues that Ford selectively enforced its policies in two ways. [48] at 13–14. First, under its own policy, Golston argues, Ford cannot rely on unfounded allegations when taking disciplinary action. [48] at 13. Golston contends that O'Connor and Lange deviated from this practice when they used an "unsubstantiated" claim—that Golston massaged the shoulders of multiple women—as the basis for termination. [48] at 13. Second, Golston argues that employees who committed more serious violations than Golston received more lenient discipline. [48] at 14.

Golston's first pretext argument cannot succeed. When assessing pretext, courts generally do not determine whether the employer has adequately substantiated its investigation. "The question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons is honest." *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (quoting *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992)); *see also Jones v. Union Pac. R. Co.*, 302 F.3d 735, 743 (7th Cir. 2002). The Seventh Circuit has "repeatedly emphasized that when assessing a plaintiff's claim that an employer's explanation is pretextual, we do not second-guess an employer's facially legitimate business decisions." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 564 (7th Cir. 2016) (quotations omitted). "An employer's reasons for firing an employee" need only be "honestly believed." *Id.*

It is true that "a jury may reasonably infer pretext from flagrant inaccuracies or inconsistencies in an employer's proffered reason for an employment decision." *Baker v. Macon Res., Inc.*, 750 F.3d 674, 677 (7th Cir. 2014). Here, Lange testified that "in situations where there is no witnesses and it's one employee's word against another employee's word, there would be no grounds for termination." [55], Def.'s Reply PSOF at 5–6 ¶ 12. Golston argues that, while the accusations regarding shoulder massages had no third-party witnesses, Lange and O'Connor nonetheless relied on them in deciding to terminate Golston. [55], Def.'s Reply PSOF at 4–5 ¶ 9.

But this is not the inconsistency Golston makes it out to be. More specifically, the numerous complaints against Golston established a pattern of behavior, distinguishing this case from a one-incident complaint pitting one employee's word against another's. [39], DSOF at 7 ¶ 41. Lange testified: "We discussed the case that we were able to establish based on witness statements and complainant's statement of pattern of behavior." [42-3] at 35 (sealed). As O'Connor put it:

> This is the way I would explain it is that we've got [DW] claiming he is rubbing – massaging shoulders. Then you have another witness [QY] who has witnessed him rubbing females' backs, massaging their shoulders. And then you have, let's see, [TE] stating that he is touching her shoulders and massaging her. So what you have – let me explain it

9

>    this way – is a pattern of inappropriate unwelcome touching of female
>    shoulders by massaging them.

[52-3] at 6 (sealed). No reasonable jury could decide from this testimony that Ford's description of its rationale for his termination was pretextual, meaning it was a "lie." *Naik*, 627 F.3d at 601.

Golston's second argument—that Ford did not terminate employees outside the protected group who committed comparable violations—also does not provide evidence of pretext. Golston is correct that "selective enforcement or investigation of a disciplinary policy" can show pretext. *Baker*, 750 F.3d at 677 (citing *Coleman*, 667 F.3d at 857–58). Golston argues that since other employees were not terminated for violating Ford's zero tolerance policy, Ford's reliance on that policy is pretextual. But as discussed above, Ford did not reprimand these other employees for sexual harassment or for a pattern of repeated contact across multiple individuals. These cases did not involve comparable violations and thus cannot establish selective enforcement by Ford. *See Barnes*, 946 F.3d at 389 (noting that "the prima facie and pretext inquiry often overlap").

Golston has not provided evidence from which a reasonable jury could find that Ford's justification for terminating him was pretextual. Thus, summary judgment for Ford is warranted under the *McDonnell Douglas* framework.

## II. *Ortiz* Framework

Golston separately argues that the evidence as a whole would allow a reasonable factfinder to find discrimination under *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). In *Ortiz*, the Seventh Circuit reaffirmed the *McDonnell Douglas* burden-shifting framework as one way of analyzing the evidence in discrimination cases but instructed that "all evidence belongs in a single pile and must be evaluated as a whole." *Id.* at 766. The *Ortiz* court refocused the inquiry on "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 765.

Golston makes several arguments that a reasonable factfinder could conclude that Golston's race, sex, and age caused his termination. First, Ford did not interview or accept statements from Ford employees that Golston did not harass them. [48] at 14. Second, Ford omitted from the investigation summary an allegedly exculpatory statement by another employee, QG, that disclaimed witnessing any inappropriate touching by Golston. [48] at 14–15. Third, Ford skewed the comparable search on Golston. [48] at 15. Finally, Golston again argues that Ford relied on "unsubstantiated" allegations in making its termination decision. [48] at 15.

10

None of Golston's arguments would allow a reasonable factfinder to conclude that race, sex, or age played a role in his termination. The fact that Ford did not interview or accept statements from Ford employees that Golston did *not* harass is not evidence of discrimination. Nothing suggests that race, sex, or age, as opposed to non-discriminatory reasons—such as relevance or credibility—motivated Ford's decision not to interview more employees or accept their statements.

Lange's decision to omit QG's statement from the investigation summary does not evince discriminatory intent. QG's statement does not necessarily exculpate Golston. The statement reveals that QG had not herself witnessed inappropriate behavior from Golston but does not contradict the specific testimony from LB, TE, and QY. [52-5] at 2 (sealed). Because Lange's report was a *summary* of investigation, Lange did not need to include every single relevant fact. Nothing else suggests that Lange's decision to exclude QG's testimony bore any relation to Golston's race, sex, or age.

Neither of Golston's final arguments, alleging that O'Connor manipulated the comparable search and alleging that Ford, in violation of its own policy, relied on "unsubstantiated" accusations, supports discriminatory intent. Golston does not cite any facts in the record to support his claim that O'Connor "manipulated" the comparable search. And while "[s]ignificant, unexplained or systematic deviations from established policies or practices can sometimes be probative of unlawful discriminatory intent," *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 907 (7th Cir. 2015) (quotation omitted), Golston does not identify evidence that Ford had a policy of categorically excluding accounts of incidents with no third-party witnesses—let alone in cases where independent accounts point to a pattern of behavior. Moreover, Golston does not explain how these "supposed infirmities in the investigative process support an inference of discriminatory intent." *Id.*; *see also Kidwell v. Eisenhauer*, 679 F.3d 957, 969 (7th Cir. 2012) (with respect to First Amendment retaliation claim: "we do not require that an employer rigidly adhere to procedural guidelines in order to avoid an inference of retaliation. Instead, we look for pretext in the form of a dishonest explanation, a lie rather than an oddity or an error.") (citation and internal quotation marks omitted).

The evidence as a whole does not support Golston's race, sex, or age discrimination claims. No reasonable jury could decide that Ford's decision to terminate Golston was based on his race, sex, or age. Thus, no reasonable jury could find causation under either Section 1981's and the ADEA's "but-for" requirement or Title VII's "motivating factor" standard.

## Conclusion

The motion for summary judgment [38] is granted.

11

Date: September 30, 2021 /s/ Martha M. Pacold